UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERICA FEBRIANTI,

Plaintiff,

-against-

MTA NYC TRANSIT; STATE OF NEW YORK,

Defendants.

25-CV-7994 (LLS)

ORDER OF DISMISSAL WITH LEAVE TO REPLEAD

LOUIS L. STANTON, United States District Judge:

Plaintiff is appearing *pro se*.[1] On October 7, 2025, Plaintiff filed an amended complaint, as of right, alleging that police officers who prevented her from sleeping in the subway system in Manhattan and Brooklyn, and a bus driver who denied her a free bus ride, had discriminated against her based on her Indonesian national origin and Muslim religion. (ECF 8.) Plaintiff also alleges that she was retaliated against for a prior suit against the City of New York. She brings these claims against Defendants "MTA NYC Transit" and the State of New York.

By order dated August 25, 2026, the Court severed claims in the amended complaint against "DOT Staten Island Ferry," "the New Jersey Port Authority Police Department," and "the New Jersey Port Authority Bus Terminal 42nd Street," which arose from separate incidents.[2] For the reasons set forth below, the Court dismisses Plaintiff's claims, with 30 days' leave to replead.

[1] By order dated October 3, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees.

[2] These claims were opened as separate actions. *See Febrianti v. NYC DOT Staten Island Ferry*, No. 26-CV-7348 (LTS) (S.D.N.Y); *Febrianti v. State of New York*, No. 26-CV-7352 (LTS) (S.D.N.Y); *Febrianti v. State of New York*, No. 26-CV-7351 (LTS) (S.D.N.Y).

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the amended complaint.[3] Plaintiff describes several separate incidents involving her use of public transit. On September 4, 2025, at about 1:45 a.m., Plaintiff was sleeping on the N subway train at the Coney Island station. Officers woke her and escorted her out of the train, allegedly denying her subway service.[4] Plaintiff was forced to remain on the street alone at night, which endangered her safety. This interfered with Plaintiff's plan to pray Fajr at a mosque by 5:00 a.m. near 28th Street N subway stop.

A similar incident had taken place earlier, on or about April 16, 2025, at the 2nd Avenue Subway F Line in Manhattan. Lieutenant Volkan escorted Plaintiff from the subway station, giving her the option of choosing to go to a hospital or shelter, or staying outside. Other homeless individuals at the station that night who were Black or "Spanish" were not removed.[5]

On September 22, 2025, at approximately 9:50 a.m., Plaintiff attempted to board an MTA New York City Transit Bus, Route B41, Bus No. 7620, heading toward Downtown Brooklyn. Plaintiff was at a bus stop located in front of a Chase Bank, between Flatbush Avenue and Church Avenue in Brooklyn. Plaintiff alleges that, even though she asked multiple times for a free bus ride, a Black female bus driver denied her a free ride. A Black male passenger who boarded the bus ahead of Plaintiff initially sat down without paying the bus fare, although he

[3] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the amended complaint unless noted otherwise.

[4] It is unclear if Lieutenant Volkan or other officers worked for the New York City Police Department or another entity.

[5] Plaintiff describes the denial of Staten Island Ferry service on approximately June 23 or June 24, 2025, and denial of access to a public bathroom at the Port Authority Bus Terminal, 42nd Street, on November 7, 2024. These allegations are not addressed in this order because they are the subject of separate suits.

eventually paid. Plaintiff contends that she was treated differently from other passengers based on her Indonesian race, and her Muslim religion, which was visible because she wears a hijab.

Plaintiff alleges that she brought previous lawsuit against the City of New York, and that these incidents were retaliation for her prior lawsuit.

Plaintiff invokes Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, asserting claims based on race and religion discrimination. She sues MTA NYC Transit and the State of New York, seeking damages.

## DISCUSSION

### A. Claims Under Title VI

Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. *Bloomberg v. N.Y.C. Dep' t of Educ.* , 119 F.4th 209, 214 (2d Cir. 2024) ("Title VI authorizes an implied private right of action to enforce [its] prohibition on intentional discrimination based on race, color, or national origin . . . ."); 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege that (1) the defendant discriminated against her on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial and motivating factor for the defendant's actions. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).[6]

Title VI claims cannot be brought against individual defendants because individuals are not recipients of federal funding. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007). Moreover, institutions are generally not liable under Title VI for the actions of

[6] *See also Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) ("Although Title VI does not, by its terms, proscribe religious discrimination, plaintiffs argue that where, as in their case, religion is 'deeply intertwined' with national origin, bias of both sorts can properly support a Title VI claim.").

their employees. *Id.* (holding that liability generally "cannot be imputed to institutions based on the actions of their employees"). An institution may be liable under Title VI for its employees' actions, however, "when the institution is 'deliberately indifferent' to discrimination to such an extent that the indifference may be viewed as racially motivated." *Id.*; *see also Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012) ("[A] school district is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student.") (citation omitted).

Plaintiff sues Defendant "MTA NYC Transit," which is officially known as the New York City Transit Authority (NYCTA), and the State of New York. The NYCTA is a public benefit corporation created pursuant to Public Authorities Law § 1201; *see New York Urb. League, Inc. v. State of N.Y.*, 71 F.3d 1031, 1033 (2d Cir. 1995) ("The NYCTA is a legally separate public benefit corporation affiliated with the MTA."). The NYCTA receives assistance from the State of New York. *Id.* ("[T]he NYCTA . . . receive[s] several categories of state assistance. . . ., *see* N.Y. Transp. Law § 18–b(1)").[7]

Plaintiff alleges that she suffered multiple incidents of racial and religious discrimination, including an incident involving a bus driver in Brooklyn, Kings County, and others involving officers at subway stations in Manhattan and Queens County. The complaint does not include any facts suggesting liability on the part of Defendant NYCTA or the State of New York for the conduct of the bus driver or officer.[8] The allegations are insufficient to plead that Defendants

---

[7] Congress has abrogated the Eleventh Amendment immunity of states for violations of Title VI. 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title VI of the Civil Rights Act of 1964[.]").

[8] Members of the New York City Transit Bureau, a subdivision of the New York City Police Department (NYPD), generally provide security within the subway system.

NYCTA and the State of New York caused Plaintiff's harms through deliberate indifference to racial discrimination. Plaintiff's statement that these incidents were in retaliation for a prior lawsuit against the City of New York, which is an entity separate from the NYCTA, are wholly conclusory. For all of these reasons, the complaint thus fails to state a claim on which relief may be granted against the NYCTA and the State of New York under Title VI, and the Court dismisses this claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Claims under 42 U.S.C. § 1983**

The complaint can be liberally construed as also asserting claims against the NYCTA, under 42 U.S.C. § 1983, for racial and religious discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.[9] The Equal Protection Clause mandates that all persons "similarly situated . . . be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To establish an equal protection violation based on selective enforcement, a plaintiff may show (1) that she was selectively treated as compared with others similarly situated, and (2) that such selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Latrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Alternatively, a plaintiff may show "that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse

[99] The Court does not liberally construe the complaint as asserting claims against the State of New York under Section 1983 because New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

effect was motivated by discriminatory animus." *Towns v. Stannard*, 431 F. Supp. 3d 44, 65-66 (N.D.N.Y. 2019) (quoting *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001)).

Pleading an equal protection claim under Section 1983 against an agency requires additional allegations. It is not enough to show that the agency's employees or agents engaged in some wrongdoing. *See Morales v. New York City Transit Auth.,* No. 19-CV-7061 (KPF), 2020 WL 3439362, at *4 (S.D.N.Y. June 23, 2020) "[A]gencies like the NYCTA are amenable to suit under § 1983, but cannot "be held liable [ ] on a *respondeat superior* theory."). "To state a claim for municipal liability — otherwise known as a *Monell* claim — a plaintiff must show that a violation of his constitutional rights resulted from a municipal policy or custom." *Id.* (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)); *see Dean v. N.Y.C. Transit Auth.*, 297 F. Supp. 2d 549, 554 (E.D.N.Y. 2004) ("A § 1983 claim against a municipal agency such as the [NYCTA] is cognizable where the alleged constitutional violation by [NYCTA] employees resulted from either a government custom, policy, pattern or practice.")

Plaintiff's amended complaint includes no allegations suggesting that the alleged racial and religious discrimination that Plaintiff was subjected to on the bus in Queens County or in the subway in Manhattan were caused by any custom, policy, or practice of the NYCTA. Although Plaintiff makes a conclusory allegation that such actions were, among other things, retaliation for her prior suit against the City of New York, no facts are pleaded in the amended complaint linking these events to her prior suit. Plaintiff thus fails to state a claim against the NYCTA for a violation of her constitutional rights, under Section 1983, and any such claims must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, the Court grants Plaintiff 30 days' leave to file a second amended complaint consistent with the standards set forth above, if she wishes to do so.

If Plaintiff does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

**CONCLUSION**

The Court dismisses Plaintiff's federal claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), declines to exercise supplemental jurisdiction of any state law claims, 28 U.S.C. § 1367(c)(3), and grants Plaintiff 30 days' leave to replead.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: October 9, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.